UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. DONALD SHAPIRO, <br> an individual <br><br> Plaintiff, <br><br> v. <br><br> CYNOSURE, LLC, GREENWOOD EQUIPMENT FINANCE LLC, <br><br> Defendants. | Case No. _____ |

## COMPLAINT AND JURY DEMAND

Dr. Donald Shapiro, by and through his counsel, brings this action against the Defendants as follows:

### PARTIES

1. Plaintiff Dr. Donald Shapiro is an individual who resides in the State of Florida.

2. Defendant Cynosure LLC ("Cynosure") is a Delaware limited liability company with its principal place of business in Massachusetts located at 5 Carlisle Road, Westford, MA 01886.

3. Defendant Greenwood Equipment Finance, LLC ("Greenwood"), upon information and belief, is a Wisconsin limited liability company with its principal place of business located at 3212 Fiddlers Creek Drive, Waukesha, Wisconsin 53188.

### JURISDICTION AND VENUE

4. Subject matter jurisdiction under 28 U.S.C. Section 1332(a) exists because there is complete diversity between the parties and the amount at issue is more than $75,000.

145165460.1

5. Cynosure is a private company. As such Plaintiff lacks information sufficient to form a belief regarding the citizenship of Cynosure's members. By contract, Plaintiff agreed to resolve any dispute arising from its agreement with Cynosure in the United States District Court for the District of Massachusetts, Boston Division.

6. Greenwood is a private company. As such Plaintiff lacks information sufficient to form a belief regarding the citizenship of Greenwood's members.

7. Personal jurisdiction over Cynosure exists because it consented to suit in the United States District Court for the District of Massachusetts, Boston Division, and has its principal place of business in Middlesex County, Massachusetts.

8. Personal jurisdiction over Greenwood exists because it has general and systemic contact with the Commonwealth of Massachusetts through its equipment financing business and its relationship with Cynosure, located in and a citizen of the Commonwealth of Massachusetts, to provide Cynosure customers with equipment financing. Cynosure directed Greenwood to provide equipment financing to Plaintiff to purchase the Product which the subject of this lawsuit.

9. Venue is proper under 28 U.S.C. Section 1391(b)(1) because Cynosure is a resident of the Judicial District and, by contract, Cynosure consented to venue in the United States District Court for the District of Massachusetts, Boston Division. Venue is appropriate concerning Greenwood for the reasons stated in paragraph 8.

## FACTUAL ALLEGATIONS

10. Per the representations on Cynosure's website, www.cynosure.com, its products are designed and approved for skin care.

11. Upon information and belief, the information on Cynosure's website about itself and its products is accurate, and Cynosure does not falsely advertise on its website.

12. Plaintiff is a 72-year-old optometrist who runs an eye care practice in Miami Beach, Florida.

13. In the summer of 2022, Cynosure, through its duly auhorized sales agent Austin Hale ("Mr. Hale") (who held the title "Cynosure Area Sales Manager"), contacted Plaintiff about Cynosure's product: TempSure RF Generator with TempSure Envi face application and FlexSure Applicator kit (the "Product").[1]

14. Upon information and belief, when Mr. Hale placed his initial solicitation call, he understood that Plaintiff was an eye care professional/optometrist whose business was not in skin aesthetics.

15. Thereafter, Mr. Hale met with Plaintiff's at Plaintiff's place of business to discuss the Product and how it could further Plaintiff's eye care practice.

16. At that initial meeting, Plaintiff explained in no uncertain terms that he would be interested in Cynosures Product if the Product could be used to help treat a condition called "dry eye."

17. Mr. Hale told Plaintiff that the Product is used by practitioners for dry eye treatment and that purchasing the Product would be accompanied by specific training from Cynosure regarding how to use the Product for dry eye treatment.

18. During that same visit, Mr. Hale also told Plaintiff that Plaintiff would have a competitive advantage in his industry using the Product because Cynosure would help market Plaintiff's business highlighting the benefits of the Product for dry eye treatment.

19. Mr. Hale returned for at least one other visit to Plaintiff's office to discuss the purchase of the Product with Plaintiff's business manager, Omar Hurtado.

---

[1] Cynosure's products are protected by trademark registration.

20. During this visit, Mr. Hale made a presentation concerning the Product and repeated to Plaintiff's business manager what he previously told Plaintiff about the Product, as described above.

21. Further, Mr. Hale assured Plaintiff's business manager that the Product would work for dry eye treatment.

22. At no point during any communication with Plaintiff and/or Plaintiff's business manager did Mr. Hale say that the Product was not regulatorily approved for dry eye treatment, including by the Federal Drug Administration ("FDA").

23. Rather, Mr. Hale suggested and gave the Plaintiff and Plaintiff's business manager the opposite impression - - the Product was approved for dry eye treatment.

24. Mr. Hale knew from his conversations with Plaintiff and his business manager that Plaintiff primarily focused on whether the Product could be used for eye treatment.

25. Under the false impression that (a) Mr. Hale was selling Plaintiff a device that was regulatorily approved for use in dry eye treatment and (b) Cynosure would provide specific training regarding how to use the Product for dye eye treatment, Plaintiff agreed to purchase the Product and signed a Customer Purchase Agreement with a $179,999.00 purchase price.

26. Plaintiff financed his purchase through Greenwood for a total cost of $191,785.00, as explained below.

27. Plaintiff eventually received the Product and training on the equipment began.

28. Cynosure's trainer, however, informed Plaintiff that Cynosure cannot provide training for dry eye treatment because use of the Product for such treatment *is not FDA approved*. In other words, Mr. Hale told Plaintiff that Cynosure would train Plaintiff how to use the machine

for dry eye treatment, but Cynosure's trainer later stated that no such training could or would be provided.

29. Further, Plaintiff learned then that Mr. Hale, before Plaintiff agreed to the purchase, had previously omitted mention that the Product was not regulatorily approved for dry eye treatment use.

30. Plaintiff would not have purchased the Product had he known this fact because Plaintiff is not willing to risk potential liability of using the machine on patients for a treatment for which the Product was not regulatorily approved.

31. He also would not have purchased the machine had he known that Cynosure would not train him how to use the machine for the dry eye treatment.

32. Cynosure will not agree to take the Product back, citing to warranty disclaimers in the parties' contract.

33. On August 25, 2022, Greenwood Equipment Finance LLC and Plaintiff entered into an Equipment Finance Agreement under which Greenwood agreed to finance Plaintiff's purchase of the Product. The agreement is governed by Wisconsin law.

34. In April 2023, Greenwood filed suit in Miami, Dade County Superior Court to enforce the Equipment Finance Agreement against Plaintiff.

35. As explained above Plaintiff would not have (a) purchased the Product or (b) agreed to financing for the Product except for the material misrepresentation and omission by Mr. Hale.

## CAUSES OF ACTION

### Count I: Fraud in the Inducement as to Cynosure

36. Plaintiff incorporates the paragraphs above herein by reference.

37. Cynsoure, through its authorized agent, Mr. Hale, made a materially false statement of fact to Plaintiff that Plaintiff would receive training concerning the Product for dry eye treatment.

38. The statement is false because Cynosure does not provide training concerning the Product for dry eye treatment.

39. Mr. Hale knew the statement was false at the time it was made.

40. Mr. Hale made the statement to induce Plaintiff to agree to purchase the Product.

41. In reliance on Mr. Hale's misrepresentation, Plaintiff purchased the Product.

42. As a proximate result of Mr. Hale's misrepresentation, Plaintiff has suffered harm to be determined at trial.

43. Cynosure, through its authorized agent, Mr. Hale, omitted a material fact in his discussions with Plaintiff prior to Plaintiff deciding to purchase the Product.

44. Specifically, Mr. Hale failed to state that the Product was not regulatorily approved for dry eye treatment.  Mr. Hale knew, because Plaintiff told him, that use of the Product for dry eye treatment was the primary reason he was purchasing the Product.

45. At the time of the omission, Mr. Hale knew that the Product was not regulatorily approved for dry eye treatment.

46. Mr. Hale's omission was intentional for the purpose of inducing Plaintiff to purchase the Product.

47. Had Mr. Hale informed Plaintiff of the omitted material fact, Plaintiff would not have agreed to purchase the Product.

48. As a proximate result of Mr. Hale's material omission, Plaintiff has suffered harm to be determined at trial.

## COUNT II: Violation of M.G.L.A. c.93A as to Cynosure

49. Plaintiff incorporates the paragraphs above herein by reference.

50. On March 14, 2023, Plaintiff sent Cynosure a demand pursuant to M.G.L.A c. 93A asking Cynosure to take back the Product and reimburse Plaintiff. A true and correct copy of the demand is attached hereto as Exhibit A and is incorporated herein by reference.

51. On March 30, 2023, Cynosure responded by letter denying Plaintiff's request for relief and stating the basis for its denial. A true and correct copy of Cynosure's response is attached hereto as Exhibit B and is incorporated herein by reference.

52. As explained herein, Cynosure, through its authorized agent, Mr. Hale, has engaged in unfair and deceptive trade practices under M.G.L.A. 93A subsection 11.

53. As a proximate result of Cynosure's deceit, material omission and unfair trade practice, Plaintiff has suffered harm and is entitled to the relief allowed by M.G.L.A c. 93A, Subsection 11.

## COUNT III – Rescission as to Greenwood

54. Plaintiff incorporates the paragraphs above herein by reference.

55. Cynosure fraudulently induced Plaintiff into purchasing the Product.

56. As a result, Plaintiff signed the Equipment Financing Agreement with Greenwood and made some initial payments.

57. In January 2023, Plaintiff alerted Greenwood by letter and email of the situation concerning Mr. Hale described above and asking for relief, which Greenwood declined.

58. Greenwood also received a copy of the 93A demand letter that is Exhibit A.

59. Greenwood's response was to file a lawsuit against Plaintiff to enforce the Equipment Financing Agreement.

60. Equity and good conscience support rescinding the Equipment Financing Agreement and restoring the parties as nearly as possible to the situation before they entered into the agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. Judgment in Plaintiff's favor and against Cynosure on Counts I and II;

B. Judgment in Plaintiff's favor and against Greenwood on Count III;

C. Rescission of the Greenwood Equipment Purchasing Agreement;

D. Damages to be determined at trial;

E. Attorney's Fees and damage multipliers allowed by M.G.L.A., c. 93A; and

F. Such other and further relief allowed by law.

## DEMAND FOR JURY TRIAL

**PLAINTIFF DEMANDS A JURY ON CLAIMS SO TRIABLE**

Respectfully submitted,

DR. DONALD SHAPIRO
By his counsel


*/s/Jack I Siegal*
Jack I. Siegal, Esq. BBO#669173
FOX ROTHSCHILD LLP
33 Arch Street, Suite 3110
Boston, MA 02110
(617) 848-4012
jsiegal@foxrothschild.com

May 1, 2023